IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALLEN ALFORD,                                    Case No. 3:10-cv-1199-MA

                Plaintiff,                        OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

            Defendant.

RORY LINERUD
P.O. Box 1105
Salem, OR 97308

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

BRETT E. ECKELBERG
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Allen Alford seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court affirms the decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 11, 2007, plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The claims were denied initially and on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on September 29, 2008, at which plaintiff appeared with his attorney and testified. A vocational expert also appeared and testified. On November 27, 2008, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on July 28, 2010. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff alleges disability beginning August 17, 2004, due to a head injury he sustained when he was assaulted with a baseball bat. Plaintiff also alleges disability due to a cognitive

disorder, hepatitis C, depression, and hearing loss. Plaintiff was born on September 9, 1970 and was 33 years old on his alleged disability onset date, and 39 years old on the date of the hearing. Plaintiff completed 11 years of school, with a history of special education classes. Plaintiff has worked as a lay up worker in a plywood mill, a logging chaser and forklift driver in a lumber mill, and was last employed installing electrical wiring in motorhome coaches. Plaintiff has a history of drug and alcohol abuse.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2007. A claimant seeking DIB benefits under Title II must establish

disability on or prior to the last date insured.   42 U.S.C. §
416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in
substantial gainful activity since his alleged onset of disability.
See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971
et seq.

At step two, the ALJ found that plaintiff had the following
severe impairments:  status post closed head injury with cognitive
disorder, right ear hearing loss, and depression.  See 20 C.F.R. §§
404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or
combination of impairments did not meet or medically equal a listed
impairment.   See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,
416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity
(RFC) to perform work at any exertional level but that plaintiff
has the following nonexertional limitations:  he is limited to
simple, repetitive tasks and minimal public contact; and is unable
to perform work that requires precise hearing.  See 20 C.F.R. §§
404.1527, 404.1529, 416.927, 416.929.   At step four, the ALJ found
plaintiff unable to perform any past relevant work.  See 20 C.F.R.
§§ 404.1565, 416.965.

At step five, the ALJ concluded that considering plaintiff's
age, education, work experience, and residual functional capacity,

jobs exist in significant numbers in the national economy that the
claimant can perform.   See 20 C.F.R. §§ 404.1560(c), 404.1566,
416.960(c), 416.966. Accordingly, the ALJ concluded that plaintiff
is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following
errors were committed:  (1) the ALJ failed to properly discount the
opinion of Alison Prescott, Ph.D.; (2) the ALJ failed to properly
evaluate the opinion of non-examining agency psychologist Bill
Hennings, Ph.D. and translate his opinion into vocational
limitations; (3) the ALJ posed a defective hypothetical to the VE;
and (4) the ALJ failed to properly develop the record.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if
the Commissioner applied proper legal standards and the findings
are supported by substantial evidence in the record.   42 U.S.C.
§ 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means
more than a mere scintilla but less than a preponderance; it is
such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Id.; Valentine, 574 F.3d at
690.  The court must weigh all the evidence, whether it supports or
detracts from the Commissioner's decision. Martinez v. Heckler,
807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision
must be upheld, even if the evidence is susceptible to more than

one rational interpretation.  Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## I.    **Plaintiff's Residual Functional Capacity.**

A claimant's RFC is the most a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ must reach the RFC assessment based on all the relevant evidence in the case record including medical records and the effects of symptoms that are reasonably attributed to a medically determinable impairment.  Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

In this case, plaintiff makes two primary arguments relating to the ALJ's RFC.  First, plaintiff argues that the ALJ failed to adequately address the medical opinions of Dr. Prescott and Dr. Hennings.  Second, plaintiff contends that the ALJ's RFC fails to incorporate significant functional limitations concerning his mental limitations.  According to plaintiff, when the physicians' opinions are properly evaluated and the functional limitations are incorporated into the RFC, he is disabled.  I disagree.

////

////

**A.   Plaintiff's testimony.**

The ALJ found that plaintiff's descriptions of his limitations were not entirely credible, a finding that is not challenged by plaintiff. Nevertheless, I briefly address this finding because it is central to the ALJ's discussion of the challenged medical opinions and plaintiff's RFC.

At the request of the state Disability Determination Services, plaintiff underwent a psychodiagnostic evaluation with Dr. Prescott on June 29, 2008. In the decision, the ALJ noted that plaintiff was less than forthcoming with Dr. Prescott about the severity of his August 17, 2004 head injury. For example, plaintiff informed Dr. Prescott that he was in a coma for one week following the August 2004 assault. However, as the ALJ indicated, plaintiff's medical records demonstrate that he received stitches for a laceration on his forehead, was treated by Brian G. Berg, M.D., and released from the emergency room on the same day. Likewise, the ALJ noted that although plaintiff reported to Dr. Prescott that he suffered memory and hearing loss as a result of his head injury, his medical records from the injury revealed a normal CT scan. Also, the ALJ noted that during Dr. Berg's examination on August 17, 2004, plaintiff demonstrated no negative neurological symptoms or other abnormal symptoms. The ALJ further detailed that plaintiff had suffered hearing loss in his right ear since at least 2001.

7 - OPINION AND ORDER

The ALJ also described that despite plaintiff's allegations of severe cognitive impairments resulting from his 2004 head injury, plaintiff has not sought treatment. As the ALJ described, since plaintiff's August 2004 head injury, he has been seen only one time, when he was examined by Geoffry Gordon, M.D., during an emergency room visit on June 4, 2007. During that encounter, plaintiff complained of chronic headaches and confusion that he attributed to his 2004 head injury. And, as the ALJ described, Dr. Gordon did not order any imaging or clinical testing because all of plaintiff's physical and neurological exams were normal. (Tr. 14, 244.) Furthermore, as the ALJ noted, plaintiff admitted to Dr. Gordon that he had only recently stopped using methamphetamine. Thus, as the ALJ accurately described, notwithstanding plaintiff's complaints of severe headaches, plaintiff received only conservative treatment following his two emergency room visits, noting that he had been treated with acetaminophen and ibuprofen. And, the ALJ noted that plaintiff admitted at the hearing that he has not required any treatment or medications since his evaluation by Dr. Prescott. As the ALJ correctly assessed, despite plaintiff's contention of severe cognitive difficulties resulting from his 2004 head injury, plaintiff submitted scant evidence to support his claim – the 2004 emergency room visit, a second emergency room visit in 2007, and the 2008 evaluation by Dr. Prescott. (Tr. 243-44.)

Although plaintiff has not challenged the ALJs' negative credibility assessment, I find it is amply supported by substantial evidence in the record, and undermines plaintiff's complaint of severe disability based on his 2004 head injury and alleged resulting cognitive disorder. Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Batson, 359 F.3d at 1195-96.

**B.   Physician's Opinions – Dr. Prescott.**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ may discount a physician's opinion that is based on a claimant's discredited subjective complaints. Tommasetti, 533 F.3d at 1040.

Plaintiff submits that the ALJ erred in assessing Dr. Prescott's opinion.  Dr. Prescott performed a psychodiagnostic evaluation on June 29, 2008, and is the sole physician to examine plaintiff's alleged mental impairments.  Plaintiff reported to Dr. Prescott that his life has not been the same since he was assaulted with a baseball bat in August of 2004.  Plaintiff informed Dr. Prescott that he suffered severe head injuries, which resulted in him being in a coma for one week.  Plaintiff reported to Dr. Prescott that since his head injury, his memory is poor causing him to forget events occurring the previous day, that he has severe daily headaches, and that he has trouble talking.  (Tr. 307.) Plaintiff also reported to Dr. Prescott that his mother assists him with his daily chores and that he no longer uses drugs or alcohol.

Dr. Prescott diagnosed plaintiff with major depressive disorder, a cognitive disorder, and that he has a severe memory impairment.  Dr. Prescott also found that plaintiff showed significant deficits in memory and concentration and was of very low intellectual functioning.

According to plaintiff, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Prescott's opinion and that the ALJ failed to incorporate specific workplace limitations identified by Dr. Prescott into the RFC.  I disagree.

In this case, Dr. Prescott opined that plaintiff suffered significant deficits in concentration and memory.  As the ALJ

10 - OPINION AND ORDER

noted, neither Dr. Berg nor Dr. Gordon found any neurological symptoms relating to plaintiff's head injury.   To be sure, a medical record cited by the ALJ reveals that during Dr. Gordon's June 2007 examination, plaintiff was coherent and "does not seem confused" despite plaintiff's allegations.   Dr. Gordon instructed plaintiff to follow up with another physician or return if he had further symptoms, and sent him home with a supply of ibuprofen.   As the ALJ correctly noted, the record is devoid of any complaints of headaches or cognitive difficulties between plaintiff's emergency room visits in 2004 and 2007.

In this instance, the ALJ gave greater weight to the opinion of Dr. Hennings over that of Dr. Prescott concerning plaintiff's mental impairments.   The ALJ found Dr. Hennings opinion to be supported by the findings of Dr. Berg, Dr. Gordon, and the record as a whole.

As detailed above, Dr. Prescott's opinion was based on plaintiff's exaggerated characterization of his symptoms, which the ALJ specifically found incredible. A review of plaintiff's medical records completely undermines plaintiff's report to Dr. Prescott that he was in a coma for a week. As discussed above, the ALJ's unchallenged adverse credibility determination is supported by the record as a whole.   Because Dr. Prescott's opinion was based on plaintiff's self-reports which were properly discounted, the ALJ

could reasonably discount Dr. Prescott's opinion. Bray, 554 F.3d
at 1228; Tommasetti, 533 F.3d at 1041.

### C.  Dr. Hennings.

In this case, plaintiff does not complain that the ALJ gave
Dr. Hennings' opinion significant weight, but instead argues that
the ALJ erroneously incorporated the limitations identified by Dr.
Hennings into the RFC. Plaintiff submits that when these
restrictions are taken into account, the ALJ's RFC is defective and
he is unable to perform the positions identified by the VE.

In his July 8, 2008 Mental Residual Functional Capacity
Assessment (MRFCA), Dr. Hennings described that plaintiff is
moderately limited in his ability to understand and remember
detailed instructions; is moderately limited in his ability to
carry out detailed instructions; is moderately limited in his
ability to maintain attention and concentration for extended
periods; is moderately limited in his ability to interact
appropriately with the general public; is moderately limited in his
ability to respond appropriately to changes in the work setting;
and is moderately limited in the ability to be aware of normal
hazards in the workplace and take appropriate precautions. (Tr.
327.)

As the Commissioner correctly indicates, in his narrative
discussion, Dr. Hennings specifically stated that plaintiff "can
understand and remember simple, moderately detailed instructions,

and can consistently maintain [concentration, persistence, and pace] for simple, multi-step tasks for normal work periods." (Tr. 329.) Additionally, Dr. Hennings described that plaintiff should not have frequent interaction with the general public, should be given adequate time to learn new job duties, and be supervised when working in hazardous situations due to his history of drug abuse. (Id.)

Here, the ALJ translated Dr. Hennings restrictions into the following RFC:

> [plaintiff] has the residual functional capacity to perform work at any exertional level but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks and minimal public contact; and is unable to perform work that requires precise hearing. (Tr. 13.)

Based on this RFC, the ALJ posed a hypothetical to the vocational expert. The hypothetical question included that the individual had completed eleven years of school in special education classes, with previous semi-skilled work at an SVP of 4, and was currently limited to simple, repetitive tasks with minimal public contact, and no precise hearing. (Tr. 48.)

Based on the hypothetical, the VE identified the occupations of: (1) housekeeping cleaner, *Dictionary of Occupational Titles* (DOT) #323.687-014, *available at* 1991 WL 672783, with 5,000 positions in Oregon and 1.7 million positions nationally; (2) cannery worker, DOT #529.686-014, *available at* 1991 WL 67419, with

2,000 positions in Oregon and 50,000 positions nationally; and (3) sorter of agricultural produce, DOT #529.687-186, *available at* 1991 WL 674781, with 1,700 positions in Oregon and 165,000 positions in the national economy.   (Tr. 16.)

I find that the RFC described by the ALJ adequately captures the limitations described by Dr. Hennings and is consistent with the medical record. <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008).  To be sure, Dr. Hennings described that plaintiff was moderately limited in his ability to understand and carry out *detailed* instructions.   However, Dr. Hennings specifically found that plaintiff was able to maintain concentration, persistence and pace for simple, multi-step tasks for a normal work period. As the RFC reflects, the ALJ translated this restriction into "simple, repetitive tasks." Additionally, the ALJ reasonably translated plaintiff's restriction to limited work with the general public to "minimal public contact."

Plaintiff also argues that the RFC fails to take into account the limitation that plaintiff requires supervision when working in hazardous situations identified by Dr. Hennings.   Dr. Hennings included this limitation as a result of plaintiff's history of drug abuse.   (Tr. 329.)   The ALJ is not required to include those impairments that are not supported by substantial evidence in the record. <u>Osenbrock</u>, 240 F.3d at 1165.

The limitation involving hazards due to plaintiff's drug abuse is debatable. At the hearing plaintiff testified that he no longer drinks, and last used illegal drugs over three years ago. Plaintiff's medical records shows that plaintiff last admitted to using methamphetamine in 2007. Additionally, agency non-examining physician Martin Kehrli, M.D., advised that plaintiff's limitations concerning hazards were due to his hearing loss, not drug abuse. (Tr. 299.)

Arguably, the RFC fails to take into account the limitation related to workplace hazards identified by Dr. Hennings. On this point, plaintiff contends the cannery worker position could require him to operate slicing machines, knives and paring tools, and when Dr. Hennings' hazard limitation is incorporated into the RFC, he would be precluded from such work. However, any such error is harmless. Tomassetti, 553 F.3d at 1042 (determining that error that is inconsequential to the ultimate nondisability determination is harmless); Burch, 400 F.3d at 679. As the Commissioner correctly contends, the two other positions identified by the VE, agricultural produce sorter and housekeeping cleaner, do not involve exposing workers to moving mechanical parts or other workplace hazards, and plaintiff does not contend that his limitation to hazards would preclude those positions. See DOT #323.687-014, 1991 WL 672783; #529.687-186, 1991 WL 674781; Tomassetti, 553 F.3d at 1042.

15 - OPINION AND ORDER

In short, I conclude that the RFC adequately captures the
deficiencies described by Dr. Hennings concerning plaintiff's
memory, sustained concentration and persistence, and social
interaction. Stubbs-Danielson, 539 F.3d at 1174.

## II.  **Step Five.**

At step five of the sequential evaluation, the burden shifts
to the Commissioner to establish that there are jobs in the
national economy which the claimant can perform. Andrews, 53 F.3d
at 1043.  The Commissioner can satisfy this burden by eliciting
testimony from a vocational expert (VE) in response to a
hypothetical question that sets out all of the claimant's
limitations and restrictions.  Osenbrock, 240 F.3d at 1165;
Bayliss, 427 F.3d at 1217; Tackett, 180 F.3d at 1103-04.

Plaintiff complains that the occupations identified by the VE
all are outside the range of his RFC.  Plaintiff argues that he is
limited to simple tasks involving no more than three steps, and
that the occupations found by the ALJ involve multiple, numerous
steps and are not repetitive in nature.

I reject plaintiff's argument that "simple, repetitive" work
limits him to performing one- to three-step tasks, and that because
a job may involve a doing more than three tasks, it is not
"simple."  Plaintiff offers no authority for his position except to
state that if he performed every conceivable task listed in the DOT
description, the job would exceed his RFC.

The ALJ relied upon Dr. Hennings' opinion in formulating the RFC, and Dr. Hennings did not limit plaintiff to performing three tasks, or three-step tasks.    Indeed, Dr. Hennings specifically found that plaintiff could understand and remember simple, moderately detailed instructions and perform simple, multi-step tasks.    As discussed above, the ALJ accurately captured those limitations in the RFC, and posed a hypothetical to the VE with those limitations and the ALJ could reasonably rely upon the VE's testimony.

As noted above, because the ALJ arguably erred in failing to include the restriction of workplace hazards in the RFC, I have eliminated the cannery worker position.

However, the remaining two positions identified by the ALJ qualify as simple, repetitive work and readily fall within plaintiff's RFC.    For example, the housekeeping job is an SVP level two, and its reasoning level requires that an individual be able to carry out simple one- or two-step instructions, and is considered repetitive, or short-cycle work.[1]    See 1991 WL 674719.    The agricultural produce sorter likewise is an SVP level two, and its reasoning level also requires an individual to be able to understand and carry out simple one- or two-step instructions, and is considered repetitive.    See  1991 WL 674781.

---

[1] I note that plaintiff incorrectly identifies the DOT number for hospital cleaner.    See *Dictionary of Occupational Titles*, #323.687-014 (1991), *available at* 1991 WL 672782.

Thus, even assuming *arguendo* that the ALJ should not have relied upon the VE's testimony relating to the cannery worker, any such error was harmless. <u>Tomassetti</u>, 553 F.3d at 1042; <u>Burch</u>, 400 F.3d at 679. The VE identified two other occupations that plaintiff could perform existing in significant numbers, and about which plaintiff does not contend involve exposure to hazards. As the ALJ correctly concluded, that portion of the VE's testimony is consistent with DOT. Because substantial evidence remains in the record to support the ALJ's step five determination, any error concerning the cannery worker occupation is harmless. <u>Burch</u>, 400 F.3d at 679. Accordingly, the court concludes that the Commissioner met its burden at step five.

### III. <u>Duty to Develop the Record.</u>

Plaintiff complains that the ALJ failed to develop the record concerning plaintiff's cognitive disorder. According to plaintiff, because Dr. Prescott stated in her 2008 evaluation that plaintiff's "special education history seems to warrant further testing of the extent of his cognitive deficits," the ALJ was required to order further cognitive testing. (Tr. 309.) I disagree.

It is plaintiff's duty to prove that he is disabled. <u>See</u> 42 U.S.C. § 423(d)(5); <u>Bayliss</u>, 427 F.3d at 1217. "An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for a proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453,

459-60 (9th Cir. 2001)(citing <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)); 20 C.F.R. §§ 404.1512(e), 416.912(e).   In this case, the ALJ did not find the record incomplete or ambiguous. Rather, the ALJ declined to give Dr. Prescott's opinion greater weight because it was based on plaintiff's discredited self-reports.

Instead, the ALJ relied upon the opinion of Dr. Hennings, which the ALJ found consistent with the other information in the record.   Dr. Hennings determined that plaintiff's cognitive disorder caused moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 12, 325.) Ultimately, as discussed above, the ALJ incorporated those limitations into the RFC as restrictions concerning plaintiff's ability to remember detailed instructions, and thus limited plaintiff to simple, repetitive tasks.   Thus, with support in the record, the ALJ found the evidence adequate to make a determination about plaintiff's disability.   Accordingly, the ALJ did not have a duty to further develop the record. <u>Bayliss</u>, 427 F.3d at 1217.

////

////

////

////

////

////

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __6__ day of DECEMBER, 2011.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge